IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CELTA AGENCIES, INC.,

    Plaintiff,

    v.                                    CIVIL NO. 01-1978 (RLA)

DENIZCILIKSANAYI VE TICAARET,
A.S., et al.,

    Defendants.

## ORDER IN THE MATTER OF MOTIONS FILED BY DEFENDANTS

    CELTA AGENCIES, INC. ("CELTA"), consignee of a shipment of prime steel reinforcing bars carried onboard the M/V MANYAS I from Turkey, to the Port of San Juan, Puerto Rico, instituted this suit claiming damages to the cargo for alleged rust and corrosion purportedly resulting from salt water contamination during the ocean voyage.

    Codefendants AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC. ("THE AMERICAN CLUB"),[1] TEB SIGORTA, A.S. ("SIGORTA")[2] and OCTAGON MARINE ("OCTAGON")[3] filed: (1) a motion under Rule 11 Fed. R. Civ. P., (2) a motion to strike an affidavit submitted by CELTA, as well as (3) individual motions for summary judgment all of which are disposed herein.

---

[1] Vessel's insurer.

[2] Cargo insurer.

[3] Marine cargo surveyor.

CIVIL NO. 01-1978 (RLA)                                    Page 2

---

**RULE 11**

The aforementioned defendants filed a Joint Motion seeking sanctions under Rule 11 Fed. R. Civ. P. contending that plaintiff has set forth false and inconsistent factual allegations in its filings with the court. According to defendants, CELTA has claimed to be the owner for value of the cargo at issue and has sought payment for the corresponding damages without disclosing that previous to initiating this litigation it had sold the merchandise at issue at full market value to its related/sister companies. Defendants further contend that plaintiff has conveniently modified its factual theory in its oppositions to defendants' dispositive motions when confronted with defendants' legal challenges.

Rule 11(b)(3) Fed. R. Civ. P. provides that by submitting documents to the court the proponent is certifying that its "factual contentions have evidentiary support." Thus, parties and counsel are precluded from alleging facts which have no evidentiary basis less they be subject to sanctions. <u>Young v. City of Providence</u>, 404 F.3d 33, 39 (1st Cir. 2005); <u>Nyer v. Winterthur Int'l</u>, 290 F.3d 456, 461 (1st Cir. 2002); <u>Top Entertainment Inc. v. Ortega</u>, 285 F.3d 115, 118 (1st Cir. 2002); <u>Soler v. P.R. Telephone Co.</u>, 230 F. Supp.2d 232, 236 (D.P.R. 2002).

Defendants base their Rule 11 request arguing that in its complaint CELTA failed to advise of a prior transaction whereby it sold most of the cargo at issue to a related/sister entity and that

both the original and supplemental statements subscribed by MR. ALONSO in response to defendants' dispositive motions contradict each other as well as run afoul of the allegations in the complaint.

Specifically, defendants contend that "Celta has mutated from being **'the real party in interest as the owner of the cargo'** to an entity **'assigning all rights to the proceeds of the claims to its related/sister companies'** and finally to an entity which allegedly **'assigned the cause of action as well as all rights to the proceeds of the claims to its related sister/companies.'**" Defendants' Reply (docket No. 156) p.3 (emphasis in original).

Accordingly, we shall proceed to examine the relevant documents filed in this case to ascertain whether indeed defendants are correct in their position that CELTA was untruthful.

In the complaint CELTA claimed that it "was the owner for value, and consignee of a shipment of cargo of 7,986.177 MT of Prime Steel Reinforcing Bars loaded on board the M/V MAYAS I on or about  January 31, 2001 and of the covering bills of lading and brings this action on its behalf and on behalf of all other parties who have become interested in said shipment." Complaint ¶ 3.

Again, at ¶ 32 of the complaint plaintiff reiterated its role in these proceedings by stating that:

> By reason of the premises, Plaintiff has sustained a loss presently estimated at no less than USD $1,000,148.97 for the damages occasioned to the shipment, and to its

CIVIL NO. 01-1978 (RLA)                                          **Page 4**

claim against its underwriter, and brings this suit on its own behalf, its affiliated and related companies, and on behalf of all other persons or parties who have become interested in said shipment.

In the Revised ISC Memoranda filed on September 17, 2003 (docket No. 82) at pp. 20-21 plaintiff advised that it had assigned the proceeds of this litigation to MATECO, INC. and that MATECO was willing to ratify that CELTA continued to be authorized to prosecute the instant claims against defendants herein.

On December 5, 2003 plaintiff sought to amend the complaint (docket No. 95) to, *inter alios*, name MATECO, INC., CELTA EXPORT, INC. and NALON, INC., all of which were plaintiff's related/sister companies, as additional party plaintiffs. The request was filed pursuant to Rule 20(a) Fed. R. Civ. P. as permissible joinder. CELTA argued that it was not necessary but was filing it to avoid "real party in interest" issues.[4]

In support of its request to amend the complaint, CELTA argued that it had "sold the steel shipment which is the subject of this lawsuit and to whom Celta assigned all rights to the proceeds from any settlement entered with the defendants or any final judgment entered by the Court in this litigation." Motion for Leave to File Amended Complaint (docket No. 95) p. 8.

---

[4]   This request was denied at the Status Conference held on February 9, 2004.  See, Minutes (docket No. 105).

CIVIL NO. 01-1978 (RLA)                                            Page 5

Plaintiff further noted that the related/sister companies "are willing to ratify by affidavit that Celta is capable and authorized to enforce their assigned claim against these defendants and agree to be bound by the results of this action". (docket No. 95) p. 10.

The amended pleading (docket No. 96) specifically alleged:

6. At all material times herein, Celta was the owner for value, and consignee of a shipment of cargo... and of the covering bills of lading, and on July 19, 2001 brought this action on its behalf and on behalf of all other parties who have become interested in said shipment, including several of its sister and related companies.

7. On or about August 30, 2000, Celta sold to Export, Nalon and Mateco the referenced shipment of prime steel reinforcing bars, at which time Celta assigned to Export, Nalon and Mateco, respectively, all rights to the proceeds from any settlement entered with the defendants to the present action or to any final judgment entered by the Court in this litigation.

8. At the commencement of the lawsuit and at the time of the loss, Celta had a legitimate and insurable interest in the claim predating the assignment to Export, Nalon and Mateco who, respectively, can ratify by affidavit that Celta is and was capable and authorized to enforce their

claims against these defendants, and that they agree to be bound by the results of this action.

Thereafter, in a statement submitted together with plaintiff's opposition to defendant's motion for summary judgment filed on May 20, 2004 (docket No. 120) CLAUDIO ALONSO LUELMO indicated that "[i]n accordance with its customary business practice, after the cargo of steel arrived in Puerto Rico, Celta Agencies, Inc. sold for full value to Mateco, Inc., Celta Export, Inc. and Nalon, Inc. respectively, the cargo of steel, including reimbursement for all duties, taxes and fees incurred, so that Mateco, Inc., Celta Export, Inc. and Nalon, Inc. rather than its purchasing agent, Celta Agencies, Inc. would bear any risk of loss due to damaged cargo." Affidavit ¶ 4.

MR. ALONSO further noted that CELTA AGENCIES "by oral agreement assigned" to the aforementioned related/sister companies "all rights to the proceeds from the claims presented by Celta Agencies, Inc." *Id.* ¶ 6 and that the related/sister entities in turn authorized plaintiff "to file, prosecute or settle all claims for cargo damages to the shipment of steel on their behalf". *Id.* ¶ 7. CELTA's right to litigate for the benefit of these corporations was expressly ratified. *Id.* ¶ 10.

Subsequently, in response to defendants' motion to strike and THE AMERICAN CLUB's motion for summary judgment plaintiff submitted MR. ALONSO's supplemental affidavit (docket No. 136) in which he

described CELTA's role in the organizational structure of the various entities and reiterated its designation as an agent for the other entities to prosecute these claims on their behalf. The document specifically indicated that "Celta Agency, Inc. has always acted as the purchasing agent for rebars for Mateco, Inc. and at times, for Celta Export, Inc. and Nalon, Inc." ¶ 5 and that "Celta Agencies, Inc., by oral agreement, assigned the cause of action for damage to the cargo object of this litigation to its related/sister companies Mateco, Inc., Celta Export, Inc. and Nalon, Inc., including all rights to the proceeds from the claims presented by Celta Agencies, Inc." in this litigation. ¶ 6.

We find that the controversy which has arisen as to what was specifically assigned by CELTA to its related/sister companies is more a result of deficient parlance than substance.

Based on the documents on file we find that notice of a transfer of interest as well as CELTA's role as a plaintiff asserting claims on behalf of others appears since the initial pleading. Further, we also find that the subsequent allegations regarding the nature of the internal transactions between the related/sister entities are not necessarily contradictory but rather supplement each other. Since the beginning of this litigation CELTA has consistently made reference to the authority granted by others to prosecute the cargo claims on their behalf.

**CIVIL NO. 01-1978 (RLA)**                                    **Page 8**

In an action involving an assignment, the court typically must consider two issues. First, it must determine exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest with regard to the particular claim involved in the action... Second, the court must assure itself that a valid assignment has been made. In this sense, the question whether a party purporting to hold an assigned claim is a real party in interest ultimately rests on the substantive law governing the assignability of the particular chose in action.

6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1545 (2d ed. 1990) at 349-50 (footnotes omitted).

"The validity of an assignment is determined by substantive law." 4 Moore's § 17.11[1][a].

It is undisputed that under Puerto Rico law CELTA was free to assign any and all claims arising from the alleged damages to its merchandise. Pursuant to art. 1065 of the Puerto Rico Civil Code, 31 Laws of P.R. Ann. § 3029 (1990) all rights arising from an obligation are transferrable except as otherwise provided by law or stipulation. This includes the assignment of a claim for damages resulting from breach of contract prior to instituting it in court, Ojeda v. Fernandez, 32 D.P.R. 749 (1924) as well as assignment of a litigious

credit subsequent to filing a complaint. Consejo de Titulares v. CRUV, 132 D.P.R. 707, 717 (1993).

Further, under Puerto Rico legal provisions there are no formal requirements to an assignment nor must it appear in writing inasmuch as it is not included in the list of contracts which must appear in a public instrument under art. 1232 of the Puerto Rico Civil Code, 31 Laws of P.R. Ann. § 3453. *See i.e.,* Consejo de Titulares v. CRUV, 132 D.R.R. at 729 (transfer of litigious credit).

"An assignment transfers ownership of a right or interest from one party to another. Under a valid assignment, the assignee of a claim becomes the real party in interest for the claim... Because it has assigned the entire claim the assignor retains no interest on which to base an action." 4 Moore's § 17.11[1][a] (footnotes omitted).

"Real parties in interest are the persons or entities possessing the right or interest to be enforced through the litigation." 4 Moore's § 17.10[1]. *See also*, Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt., Inc., 620 F.2d 1, 4 (1st Cir. 1980).

"The 'real party in interest' provision is intended to protect defendants from multiple liability in actions by subsequent claimants and also to ensure that the judgment in the action will have preclusive res judicata effect." 4 Moore's § 17.10[2]. Prevor-Mayorsohn Caribbean, Inc., 620 F.2d at 4 (protect defendant from similar suits by non-party and ensure res judicata effect); Marine

Office of America, Corp. v. Lilac Marine Corp., 296 F.Supp. 91, 99 (D.P.R. 2003) (real party in interest requirement allows carrier to "know against whom he must defend himself and be protected against a subsequent action by another party.")

Thus, assuming as CELTA contends, that it assigned the cargo damages claims to its related/sister entities, the question remains as to whether or not it can still pursue those claims in this action. According to the facts as proffered by plaintiff it has been authorized by the assignees to act on their behalf. The related/sister companies, having paid CELTA, now stand in CELTA's shoes and have the right to seek payment for the damaged cargo from those responsible.

We fail to see defendants' prejudice by allowing CELTA to prosecute these claims on their behalf particularly when discovery in this case is still in its initial stages. Further, defendants' obligation to pay is contingent on whether indeed liability is established and damages proven. Additionally, there is no danger from further claims since these entities have ratified CELTA's authority and "[a] judgment by or against the real party in interest representative is binding on the person represented." 4 Moore's § 17.10[2]. [P]rincipals are bound by judgments entered in actions properly litigated by their agents on their behalf." Prevor-Mayorsohn Caribbean, Inc., 620 F.2d at 4.

**CIVIL NO. 01-1978 (RLA)**                                    **Page 11**

Accordingly the Joint Motion under Federal Rule of Civil Procedure 11 (docket No. **150**) is **DENIED.**

### MOTION TO STRIKE AFFIDAVIT

The AMERICAN CLUB has moved the court to strike the affidavit under penalty of perjury subscribed by CLAUDIO ALONSO LUELMO and submitted with plaintiff's opposition to its motion for summary judgment filed on May 20, 2004 (docket No. 120) ("original affidavit"). In essence, codefendant claims that the document is inadmissible inasmuch as the declarant did not specifically indicate when he became an officer of the subject corporations and did not expressly state that he had personal knowledge of the facts asserted therein.

Rule 56(e) Fed. R. Civ. P. sets out the requirements for affidavits used in the course of summary judgment. In pertinent part, the rule provides that "[s]upporting or opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

The affiant's personal knowledge regarding the proffered facts is fundamental. Thus, an expression to the effect that the statement is based to the best of his knowledge will not suffice. <u>Lopez-Carrasquillo v. Rubianes</u>, 230 F.3d 409, 414 (1st Cir. 2000). Additionally, the document "must concern facts as opposed to conclusions, assumptions, or surmise", <u>Perez v. Volvo Car Corp.</u>, 247

CIVIL NO. 01-1978 (RLA)                                          Page 12

F.3d 303, 316 (1st Cir. 2001) not conclusory allegations. Lopez-Carrasquillo v. Rubianes, 230 F.3d at 414.

The affidavit must contain facts which are admissible in evidence. *Id.* "Evidence that is inadmissible at trial, such as inadmissible hearsay, may not be considered on summary judgment." Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

Further, in order to be admissible, the proffered statements must be specific and adequately "supported with particularized factual information." Perez v. Volvo Car Corp., 247 F.3d at 316. *See also*, Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 53 (1st Cir. 2000) ("specific factual information based upon [affiant's] personal knowledge.")

The alleged deficiencies pointed out by codefendant have been cured by the affidavit of MR. ALONSO LUELMO submitted along with plaintiff's Opposition (docket No. 135) ("supplemental affidavit"). In his more recent statement the declarant expressly noted that the information provided was based on his personal knowledge and in his capacity as director of the related/sister entities which corporate positions he occupied prior to the events at issue in this litigation.

Accordingly, we find that the supplemental statement complies within the strictures of Rule 56(e). Hence, the Motion to Strike filed by THE AMERICAN CLUB (docket No. **131**) is **DENIED**.

CIVIL NO. 01-1978 (RLA)                                                    **Page 13**

---

## SUMMARY JUDGMENT STANDARD

Rule 56(c) Fed. R. Civ. P., which sets forth the standard for ruling on summary judgment motions, in pertinent part provides that they shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000); Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994). A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F. 3d 27, 31 (1st Cir. 1995).

"In ruling on a motion for summary judgment, the court must view 'the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor.'" Poulis-

Minott v. Smith, 388 F.3d 354, 361 (1st Cir. 2004) (citing Barbour v. Dynamics Research Corp., 63 F.3d 32, 36 (1st Cir. 1995)).

Credibility issues fall outside the scope of summary judgment. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). See also, Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 432 (1st Cir. 2000) ("court should not engage in credibility assessments."); Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 49 (1st Cir. 1999) ("credibility determinations are for the factfinder at trial, not for the court at summary judgment."); Perez-Trujillo v. Volvo Car Corp., 137 F.3d 50, 54 (1st Cir. 1998) (credibility issues not proper on summary judgment); Molina Quintero v. Caribe G.E. Power Breakers, Inc., 234 F. Supp.2d 108, 113 (D.P.R. 2002). "There is no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, and no room for the judge to superimpose his own ideas of probability and likelihood. In fact, only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment.". Cruz-Baez v.

**CIVIL NO. 01-1978 (RLA)**                                    **Page 15**

Negron-Irizarry, 360 F. Supp.2d 326, 332 (D.P.R. 2005) (internal citations, brackets and quotation marks omitted).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment, Anderson v. Liberty Lobby, Inc., 477 U.S. at 256-257, 106 S.Ct. 2505, 91 L.Ed.2d 202; Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2000); Grant's Dairy v. Comm'r of Maine Dep't of Agric., 232 F.3d 8, 14 (1st Cir. 2000), and cannot rely upon "conclusory allegations, improbable inferences, and unsupported speculation". Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 412 (1st Cir. 2000); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## THE FACTS

On or about July 10, 2000 CELTA purchased a shipment of 7,011 bundles of prime steel reinforcing bars from a non-party steel producing mill in Istanbul, Turkey for the sum of $1,653,138.78 under "Commercial Invoice" dated July 11, 2000.

The cargo was insured by codefendant SIGORTA for a total amount of $1,818,452.66. The marine insurance policy was issued to the order of the shipper covering the marine risks and liability associated with the shipment and CELTA was provided with the corresponding Insurance Certificate issued by SIGORTA.

The AMERICAN CLUB provided Protection and Indemnity Coverage to the M/V MANYAS I.

The cargo arrived at the Port of San Juan, P.R. onboard the M/V MANYAS I on August 15, 2000.

On or about August 30, 2000 CELTA sold most of the cargo at issue (6,240 bundles) to MATECO, INC. for $1,871,775.77.[5]

On September 12, 2000 CELTA wrote to OCTAGON confirming their agreement reached on that day whereby CELTA accepted OCTAGON's "offer of payment of the claim at 55% (fifty five percent) damage... which results in US$1,000,148.97".

On January 18, 2001 SIGORTA notified CELTA that OCTAGON was not its claim agent but merely a surveyor appointed pursuant to the terms of the insurance policy and hence, any agreement between them was not binding on SIGORTA.

A complaint was instituted by CELTA on July 19, 2001 seeking $1,000,148.97 in damages.

### THE AMERICAN CLUB

Plaintiff seeks damages to the cargo from THE AMERICAN CLUB pursuant to the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1301 *et seq.* THE AMERICAN CLUB has raised a myriad of affirmative defenses.[6] However, for purposes of the outstanding motion codefendant

---

[5]   The remainder of the cargo was sold to NALON, INC. for $59,073.11 and to CELTA EXPORT, INC. for $298,173.23.

[6]   *See*, Motion for Summary Judgment (docket No. 108) ¶ 4 p. 2.

argues that CELTA did not suffer any compensable damages under COGSA having sold the cargo at issue for a sum higher than its insured value.

COGSA clearly provides that the carrier's liability cannot exceed "the amount of the damage actually sustained". 46 U.S.C. § 1304(5). "The purpose behind COGSA's damage recovery scheme is to make the injured party whole by properly compensating for the loss suffered." Marine Office, 296 F. Supp.2d at 103.

Ordinarily the traditional "market value rule" is used for computing damages to spoiled cargo. This formula consists of calculating "the difference between the fair market value of the goods at the port of destination in the condition they were in when shipped and their value as damaged." 1 Thomas J. Schoenbaum, Admiralty and Maritime Law § 10-37 at 727 (Thompson West 4th ed. 2001). See also, BP N. Am. Petroleum v. Solar ST, 250 F.3d 307, 312 (5th Cir. 2001); Minerais U.S. Inc. v. M/V Moslavina, 46 F.3d 501, 502 (5th Cir. 1995); Fortis Corp. Ins., S.A. v. M/V Cielo del Canada, 320 F.Supp.2d 95, 106 (S.D.N.Y. 2004); Ferro Union, Inc. v. M/V Tamamonta, 317 F. Supp.2d 456, 459 (S.D.N.Y. 2004); Marine Office, 296 F. Supp.2d at  103.

The "market-value rules makes the cargo claimant whole" Minerais, 46 F.3d at 502. "Such a damage award places the injured cargo owner in the same position it was in before the damage." Id. Therefore, related expenses are included in the damages computation.

"The reasoning behind this rule [market value] is that the price of the freight, and the shipper's costs such as insurance and taxes, will be figured into the market rate." <u>Fortis</u>, 320 F. Supp.2d at 107. "Incidental damages are also recoverable, such as the cost of destruction of the cargo, demurrage fees, and survey costs. *Id.* at 108. "In addition to the actual loss or damage to the cargo, there usually arise necessary expenses incidental to the damage sustained. These expenses include survey fees, necessary transportation, warehousing, and the like. Such incidental expenses are recoverable if they were reasonably considered necessary at the time they were incurred." <u>Marine Office</u>, 296 F. Supp.2d at 107.

This formula, however, does not provide the exclusive means for measuring damages to cargo. Other alternatives may be used if deemed better suited for the particular situation at hand. *Id*. at 104. "The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to, if for special reasons, it is not exact or otherwise not applicable. <u>Illinois Cent. R.R. v. Crail</u>, 281 U.S. 57, 64-65, 50 S.Ct. 180, 181, 74 L.Ed. 699 (1930); <u>BP N. Am. Petroleum</u>, 250 F.3d at 312; <u>Minerais</u>, 46 F.3d at 502. "Market value, however, is only one method of ascertaining the loss to the shipper. It may be discarded where more accurate means are available." <u>C. Itoh & Co. (America), Inc. v. M/V Hans Leonhartdt</u>, 719 F.Supp. 479, 509 (E.D. La. 1989).

CIVIL NO. 01-1978 (RLA)                                          Page 19

Additionally, the cargo interests have a duty to mitigate damages. Fortis, 320 F. Supp.2d at 106.

As previously ruled the claims for damages belong to the assignees. Hence, during trial plaintiff, on behalf of the assignees, will need to establish damages either under the traditional market value rule or present evidence that it should not be used but rather that some other sanctioned formula is better suited for measuring damages for the facts at hand.

Based on the foregoing THE AMERICAN CLUB's Motion for Summary Judgment (docket No. **108**) is **DENIED**.

<b>SIGORTA/OCTAGON</b>

CELTA seeks relief as to SIGORTA for the alleged cargo damage under two distinct legal theories. Initially, CELTA pleads a cargo insurance claim as the beneficiary of a cargo policy issued by SIGORTA which covered the merchandise at issue during its voyage.

Additionally, CELTA claims a breach of an alleged oral settlement agreement entered with OCTAGON which CELTA claims was acting as SIGORTA's settlement agent.

In its motion for summary judgement in which OCTAGON joined[7] SIGORTA it is argued that plaintiff has no valid cargo insurance claim because it suffered no loss.

---

[7] *See*, Motion Joining Motion for Summary Judgment by defendant Teb Sigorta (docket No. **130**).

As to the breach of oral agreement claim SIGORTA denies liability arguing that: (1) an oral agreement of this nature is not valid under local law; (2) OCTAGON's consent was void due to CELTA's failure to disclose the previous sale; and (3) CELTA cannot litigate these claims on behalf of its related/sister companies inasmuch as plaintiff merely assigned them the litigation "proceeds" but not the underlying claims.

### No Damages

SIGORTA argues that CELTA suffered no loss because it sold the cargo without affording the purchaser any discount or reductions for alleged salt water damage and was paid in excess of what would have been paid from an insurance claim had the cargo been declared a total loss.

This argument is rejected based on the same grounds THE AMERICAN CLUB's motion was denied.

### Oral Agreement

SIGORTA contends that the alleged oral settlement agreement is invalid because it failed to comply with the provisions of the Puerto Rico Commerce Code which require that contracts involving sums greater than $300.00 must be in writing. 10 P.R. Laws Ann. § 1302 (1997).

However, it is undisputed that the issue at hand pertains to a purported settlement agreement regarding a loss claim under a marine insurance policy covering the cargo. Hence, it is deemed a maritime

CIVIL NO. 01-1978 (RLA)                                          **Page 21**

---

contract within federal admiralty jurisdiction. "Federal admiralty jurisdiction exists when the subject matter of a contract which underlies a case or controversy is maritime in nature... [and] federal admiralty jurisdiction attaches in actions based upon marine insurance policies." Acadia Ins. Co. v. McNeil, 116 F.3d 599, 601 (1st Cir. 1997).

Therefore, the validity of a settlement agreement disposing of this claim will be examined under federal Maritime Law. *See,* Chilsan Merchant Marine Co., Ltd. v. N/V K Fortune, 110 F. Supp.2d 492, 496 (E.D. La. 2000) ("[T]he claims are maritime in nature, and federal maritime law applies to the validity of the agreement to settle them.")

It has been held that under maritime law an oral agreement is binding on the parties. "For it is an established rule of ancient respectability that oral contracts are generally regarded as valid by maritime law." Kossick v. United Fruit Co., 365 U.S. 731, 734, 81 S.Ct. 886, 889, 6 L.Ed.2d 56 (1961). *See*, Eimskip, The Icelandic S.S. Co., Ltd. v. Atlantic Fish Mkt., Inc., 417 F.3d 72, 76 (1st Cir. 2005) ("[O]ral contracts are valid under general maritime law."); B&B Schiffahrts GmbH & Co. v. Am. Diesel & Ship Repairs, Inc., 136 F. Supp.2d 590, 596 (E.D. La. 2001) ("Under maritime law, an oral contract is binding."); Sea-Land Serv., Inc. v. Sellan, 64 F. Supp.2d 1255, 1261-62 (S.D. Fla. 1999); ("Oral settlement agreements are enforceable [under maritime law and] [t]he writing only provides

evidence of the content of the agreement, and is not the agreement itself.")

This doctrine responds to the particular needs of the shipping industry. "Indeed, because of the distances involved in shipping contracts, oral settlement agreements are widespread in the industry. Thus the fact there is no written settlement agreement signed by the parties to this case is not dispositive of the question whether a settlement was reached." <u>Chilsan</u>, 110 F. Supp.2d at 496 (citations omitted).

Accordingly, we reject defendant's argument that the alleged settlement agreement had to comply with the formalities of the local provisions.[8]

### Duty to Disclose

SIGORTA claims that CELTA's failure to disclose the prior cargo sale cargo constituted deceit and therefore, vitiated the necessary consent for a valid insurance settlement agreement. This argument is without merit.

The court having found that subsequent to having assigned its claims CELTA was authorized to act on the assignees' behalf it, consequently, had the authority to negotiate a settlement regarding the insurance proceeds.  Given the assignment of rights as well as the authority granted plaintiff by the various related/sister companies to act on their behalf as previously discussed we disagree

---

[8]  OCTAGON's authority to bind SIGORTA remains at issue.

**CIVIL NO. 01-1978 (RLA)**                                     **Page 23**

with SIGORTA's reasoning that OCTAGON's consent regarding settlement was void or that it had no authority to pursue these claims on their behalf.

### Proper Party Plaintiff

SIGORTA further argues that CELTA only assigned the profits from the claims asserted in these proceedings but not the claims themselves. Hence, it is the only proper party plaintiff to this action. We already disposed of this argument in ruling on THE AMERICAN CLUB's dispositive motion and thus, there is no need to address it further.

Thus, SIGORTA's Motion for Summary Judgment (docket No. **125**) is **DENIED.**

### CONCLUSION

Based on the foregoing, the following motions filed by codefendants are **DENIED:**

–     Joint Motion under Federal Rule of Civil Procedure 11 (docket No. **150**);[9]

–     Motion to Strike filed by THE AMERICAN CLUB (docket No. **131**);[10]

---

[9]   *See*, Opposition (docket No. **151**); Reply (docket No. **156**).

[10]   *See*, Opposition (docket No. **135**).

**CIVIL NO. 01-1978 (RLA)**                                        **Page 24**

–       Motion  for  Summary  Judgment  filed  by  THE  AMERICAN  CLUB

        (docket No. **108**);[11]

–       Motion  for  Summary  Judgment  filed  by  SIGORTA  (docket  No.

        **125**).[12]

IT IS SO ORDERED.

San Juan, Puerto Rico, this 18th day of October, 2005.


                              S/Raymond L. Acosta
                               RAYMOND L. ACOSTA
                          United States District Judge

---

[11]  *See*, Plaintiff's Opposition (docket No. **119**); Reply (docket
No. **132**); Sur-Reply (docket No. **135**).

[12]  *See*, Motion Joining Motion for Summary Judgment by defendant
Teb Sigorta (docket No. **130**); Plaintiff's Opposition (docket No.
**136**).